IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ALVARO ANTONIO OPORTA,

Petitioner,

vs.

MARKWAYNE MULLIN, Secretary
of the United States Department of
Homeland Security, et al.,

Respondent.

8:26-CV-363

MEMORANDUM AND ORDER
CONDITIONALLY GRANTING
WRIT OF HABEAS CORPUS

The *pro se* petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement at the McCook Detention Center in McCook, Nebraska. Filing 1. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. Filing 1. The petitioner asserts his prolonged detention—since October 1, 2025—violates the Due Process Clause of the Fifth Amendment. Filing 1 at 6. The Court agrees, and will conditionally grant the petition.

BACKGROUND

The petitioner is a citizen of Nicaragua who entered the United States in August 2023. Filing 1 at 11. He did not encounter ICE or other government officials upon entry. He has no criminal history, other than an arrest for traffic violations in late September 2025 in Iowa. Filing 8 at 3. After that arrest, he was released to ICE custody and detained as an "applicant for admission" pursuant to 8 U.S.C. § 1225(b)(2)(A). *See Avila v. Bondi,* 170 F.4th 1128, 1138 (8th Cir. 2026).

An immigration judge ordered the petitioner removed to Nicaraugua or, in the alternative, to Costa Rica, in December 2025. Filing 8-3 at 3. His

applications for asylum and other relief were denied. The petitioner's appeal of the immigration judge's order has been pending since May 2026. *See* filing 8 at 3. He has been detained by ICE since October 1, 2025. Filing 8 at 3.

## DISCUSSION

District courts can provide habeas relief to any person detained in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. That guarantee protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The nature of that protection may depend on a person's immigration status and circumstance, *id.*, but it is never irrelevant. The petitioner asserts his 9-month-long detention without the opportunity for an individualized hearing violates his due process rights. Filing 1 at 10.

### *Mandatory Detention*

The petitioner is in ICE custody for the duration of his removal proceedings pursuant to § 1225(b)(2)(A). That statute mandates detention for any noncitizen "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Avila*, 170 F.4th at 1138. The relevant statutes and regulations do not contemplate the length of detention, nor any procedural rights to seek release.

Mandatory detention is not unique to § 1225(b)(2)(A). For example, the Attorney General must "take into custody" any removable noncitizen convicted of certain crimes according to § 1226(c), and, under § 1231(a)(2), detention is mandatory for up to 90 days for anyone subject to a final order of removal.

2

Certain noncitizens may be detained longer than 90 days, in the discretion of the Attorney General, under § 1231(a)(6). But the differences among these mandatory detention provisions, and the differing justifications for them, have important implications for due process.

The Eighth Circuit has held that mandatory detention under § 1226(c) is not offensive to the Constitution, regardless of the length of detention. *Banyee v. Garland,* 115 F.4th 928, 932 (8th Cir. 2024). Section 1226(c) is applicable only to a "limited class of deportable" noncitizens, based on their convictions for certain specific crimes. *Demore v. Kim*, 538 U.S. 510, 518 (2003). The circuit declined to perform the due-process balancing test articulated by *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976), because that "balancing" had already been done by the Supreme Court in *Demore. Banyee*, 115 F.4th at 933.

The Supreme Court explained in *Demore* that § 1226(c) was adopted "against a backdrop of wholesale failure by the [government] to deal with increasing rates of criminal activity by aliens." 538 U.S. at 518. The categorical detention provision was justified, and therefore constitutional, because "in adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release [for that class of aliens] . . . would lead to large numbers of deportable *criminal* aliens skipping their hearings and remaining at large in the United States unlawfully." *Id.* at 528 (emphasis supplied).

The *Demore* Court relied, in part, on a decades-old case upholding a policy denying bail to noncitizens associated with the Communist Party. *Carlson v. Landon,* 342 U.S. 524, 538 (1952). The challenged policy was not categorical. *Id.* at 541-42 ("There is no evidence or contention that all persons arrested as deportable . . . for Communist membership are denied bail. In fact, a report . . . shows allowance of bail in the large majority of cases."). But the Attorney General's discretion to hold such noncitizens without bail was

3

justified: Congress enacted legislation based on evidence that Communist Party members engaged in violence to achieve political goals, *see id.* at 536, so, "evidence of membership plus personal activity in supporting and extending the Party's philosophy concerning violence [gave] adequate grounds" for the Attorney General to detain anyone in that category of noncitizens, even without an individualized finding of dangerousness. *See id.* at 541.

According to *Demore*, the convictions delineated in § 1226(c) reflected "personal activity" similar to associating with the Communist Party "that Congress considered relevant to future dangerousness," justifying mandatory detention without bail. 538 U.S. at 525 n.9. Detention during removal proceedings without the opportunity for bond is therefore constitutionally permissible for a "criminal alien who has conceded that he is deportable." *Id.* at 531. Due process only required a noncitizen be able to contest whether he belonged in that category. *See id.* at 514; *id.* at 532 (Kennedy, J., concurring).

In *Reno v. Flores,* 507 U.S. 292 (1993), the juvenile petitioners were subject to detention without bond during their removal proceedings because they could not be released to their parents, close relatives, or guardians. *See* 8 C.F.R. § 242.24 (1992). The Immigration and Naturalization Service promulgated those regulations out of "concern for the welfare" of juveniles, because the agency was ill-equipped to determine whether "just any adult" was a safe, appropriate person with whom the juvenile could live. *See Flores,* 507 U.S. at 310, 312. The Court upheld the categorical presumption because "a detention program justified by the need to protect the welfare of juveniles is not constitutionally required to give custody to strangers," given the administrative burdens of vetting those adults. *Id.* at 312.

However, the Court also held that deportation hearings for detained juveniles "must be concluded with reasonable dispatch to avoid habeas corpus."

*Id.* at 314 (internal quotation omitted). The regulatory categorical presumption could be rebutted, and a juvenile could be granted habeas relief, if he was "being held for undue periods." *See id.* The *Flores* court did not elaborate on how long an "undue period" might be. *See id.*

In the context of § 1226(c)—which, again, mandates detention for aliens convicted of certain crimes—"nothing suggests that length determines legality." *Banyee,* 115 F.4th at 932 (citing *Demore,* 538 U.S. at 513). In *Zadvydas*, on the other hand, the Supreme Court determined that noncitizens subject to a final order of removal under § 1231(a)(6) could not be indefinitely detained, as doing so "would raise serious constitutional concerns." 533 U.S. at 682. The Court found an implicit time limit in the statute—a noncitizen detained longer than six months was entitled to a procedural right to seek release. *See id.* at 701.

With that background, the Court turns its attention to § 1225. Implicit or otherwise, there is no statutory limit to how long a person can be detained pursuant to § 1225(b)(2)(A). *Jennings v. Rodriguez,* 583 U.S. 281, 302 (2018). But neither the Eighth Circuit nor the Supreme Court have answered whether prolonged detention under § 1225(b)(2)(A) violates due process. *See id.* at 312; *Avila,* 170 F.4th at 1140 (Erickson, J., dissenting). Several, if not most, district courts have found that prolonged detention under the various schemes of § 1225(b), without the opportunity for an individualized determination to justify detention, violates the right to due process. *Leonteva v. Noem,* No. 4:26-cv-43, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026) (collecting cases); *Banda v. McAleenan,* 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (collecting cases); *see also Axel J.M.C. v. Stanski,* No. 26-cv-2281, 2026 WL 1171344, at *4 (D. Minn. Apr. 29, 2026); *Suarez-Gonzalez v. Olson,* No. 26-cv-590, 2026 WL 2169410, at *9 (E.D. Wisc. July 28, 2026).

5

District courts exercising habeas jurisdiction "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas,* 533 U.S. at 699; *see also Flores,* 507 U.S. at 314; *Demore,* 538 U.S. at 532 (Kennedy, J., concurring) ("Were there an unreasonable delay . . . in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness . . . ."). This Court considers those questions now.

### *Due Process*

Deciding what process is due ordinarily requires a form of *Mathews v. Eldridge* interest balancing. *Banyee,* 115 F.4th at 933. With the above framework in mind, the government argues no balancing is necessary because the categorical mandatory detention scheme of § 1225(b)(2)(A) reflects Congress's "legislative judgment" as to who should be detained pending deportation proceedings, similar to § 1226(c). *See* filing 6 at 6.

The Court disagrees. Based on the foregoing, the justifications for categorical civil detention without bond have been based on *evidence* that some quality of the members of that category indicates a danger to the community, *see Carlson,* 342 U.S. at 535-36, or a risk that the alien will not appear at his proceedings, *see Demore,* 538 U.S. at 519. *Accord Zadvydas,* 533 U.S. at 690-91. Less relevant here, mandatory civil detention may also be justified if it is in a juvenile's best interest. *See Flores,* 507 U.S. at 296.

A recent panel decision from the United States Court of Appeals for the Fifth Circuit determined that Congress lacked evidence linking the category of aliens subject to detention in § 1225(b)(2)(A) to an actual *need* for detention—*i.e.,* some categorical risk of flight or danger to the community. *See Sosnava*

6

*Rodriguez v. Ortega,* 180 F.4th 702, 724 (5th Cir.), *reh'g en banc granted, opinion vacated,* No. 26-50183 (July 10, 2026). The panel determined the detention provision in § 1225(b)(2)(A) was "not 'narrowly focuse[d] on a particularly acute problem' relating to the Government's admittedly weighty interest in the safe, effective operation of removal orders." *Id.* (quoting *United States v. Salerno,* 481 U.S. 739, 750 (1987)).

The government argues that Congress determined any person who "crossed borders and traveled in violation of United States law," filing 6 at 6, should be detained without bond. That isn't a reasonable justification. An "alien's removable status itself" is not a sufficient explanation for mandatory detention. *Zadvydas,* 533 U.S. at 691. Preventative detention based on dangerousness is "limited to specially dangerous individuals and subject to strong procedural protections." *Id.*; *accord Carlson,* 342 U.S. at 538 (intent to injure cannot "be imputed generally to all aliens subject to deportation"). "Unlawfully travelling" can hardly be considered an especially dangerous crime.

In the absence of a categorical justification for his detention, the remedy for the petitioner is determined by a procedural due process analysis under *Mathews v. Eldridge. See Sosnava Rodriguez,* 180 F.4th at 725; *Leonteva,* 2026 WL 711766, at *6; *Alvarez-Rico v. Noem,* No. 4:26-cv-729, 2026 WL 522322, at *4 (S.D. Tex. Feb. 25, 2026); *cf. Banyee,* 115 F.4th at 933; *Boumediene v. Bush,* 553 U.S. 723, 781 (2008). *But see, e.g., Banda,* 385 F. Supp. 3d at 1106 (employing a "case-specific analysis" to determine whether a particular procedural safeguard must be provided). The Court considers the private interest affected, the risk of erroneous deprivation without additional procedures, and the government's interest, both financially and administratively, in providing the additional process. *Mathews,* 424 U.S. at

335.

A noncitizen's liberty interest in freedom from prolonged detention "is, at the least, strong enough to raise a serious [constitutional] question." *See Zadvydas*, 533 U.S. at 680. Whether the petitioner has such an interest depends on whether his detention is, in fact, "prolonged." Courts, Congress, and the relevant regulations have generally recognized two presumptively reasonable periods of detention—90 days, *see, e.g.*, § 1231(a)(1), or 6 months, *see Zadvydas*, 533 U.S. at 701. The petitioner has been detained over 9 months, longer than either presumptively reasonable period, so it's safe to say his detention has been "prolonged."[1]

Given the breadth of § 1225(b)(2)(A), there is a great risk of erroneous deprivation of liberty. *See Axel J.M.C.*, 2026 WL 1171344, at *4. The statute covers millions of noncitizens who have entered the country unlawfully. *See Avila*, 170 F.4th at 1138 (Erickson, J., dissenting). Like most undocumented noncitizens, the petitioner has no criminal history,[2] and he alleges strong ties to his community, indicating he is not a flight risk. *See* filing 1 at 10. Congress made no findings justifying mandatory detention for this category of noncitizens, nor has the government made any determination as to why the petitioner, specifically, should be in custody. *See* filing 1 at 10. Without such a determination, the risk of an erroneous deprivation is high. *See Zadvydas*, 533

---

[1] The Court takes no position, at this particular juncture, at what specific point a detention may become so prolonged that a person's liberty interests are implicated.

[2] Nat'l Inst. of Just., Undocumented Immigrant Offending Rate Lower Than U.S.-Born Citizen Rate (Sept. 12, 2024) (last visited Jan. 22, 2025) (on file with H.R. Document Repository, https://docs.house.gov/meetings/JU/JU01/20250122/117827/HHRG-119-JU01-20250122-SD004.pdf [https://perma.cc/WE6Z-9GFB]).

U.S. at 690.

While the government no doubt has a strong interest in enforcing immigration laws, *see Shaughnessy v. United States*, 345 U.S. 206, 210 (1953), and a generalized interest in ensuring noncitizens appear for their removal hearings, *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017), the government's interest in detaining the petitioner without a hearing is low. In immigration court, custody hearings are (or at least were) routine, and required under the "default rule" governing detention of noncriminal, adult noncitizens pending removal proceedings. *See Jennings*, 583 U.S. at 288 (discussing § 1226(a)); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1105 (E.D. Cal. 2026). There's little to justify the potential for an erroneous deprivation of liberty, even in the face of the government's admittedly strong interests.

For these reasons, due process requires the government provide the petitioner with some way to seek release. As the regulations for bond hearings pursuant to §§ 1226(a) or 1231(a) are not strictly applicable to detentions under § 1225(b)(2)(A), the Court will not prescribe that specific remedy (though it is likely the most straightforward course for the government). Rather, it is up to the government to determine the appropriate procedure, but it must articulate some individualized justification to detain the petitioner without bond. *See Sosnava Rodriguez*, 180 F.4th at 728. Accordingly,

IT IS ORDERED:

1.    The Petition for Writ of Habeas Corpus (filing 1) is conditionally granted.

2.    **On or before August 10, 2026**, the government shall provide the petitioner with a detention hearing, at which the

9

government must articulate an individualized reason for detaining the petitioner.

3.    If the government does not provide the petitioner with a detention hearing as required, the petitioner must be immediately released from detention.

4.    **On or before August 12, 2026**, the government shall provide the Court with a status update regarding the hearing or, if no hearing was held, advise the Court regarding the petitioner's release.

Dated this 3rd day of August, 2026.

BY THE COURT:

_____

John M. Gerrard
Senior United States District Judge

10